UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **S.J. REEVES** and **H. O'MALLEY**, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> **7-ELEVEN, INC.**, <br><br> *Defendant.* | Case No. 1:22-cv-3533-RCL |

## MEMORANDUM AND ORDER

     S.J. Reeves and H. O'Malley, residents of Washington, D.C., have brought a putative class action suit against 7-Eleven, Inc. over the company's sale of menthol cigarettes. In February 2023, this Court applied the primary jurisdiction doctrine to grant the parties' joint motion to stay the case while the FDA considered a proposed rule banning menthol cigarettes. Since then, however, the FDA has repeatedly delayed its rulemaking. A rule the FDA originally expected to be final by August 2023 now lacks any timeline. Plaintiffs have thus moved to lift the stay. The question is whether this case should remain stayed despite the FDA's delays.

     The time has come to lift the stay and allow this case to move forward. Like a smoker daily promising himself he will quit *tomorrow*, the FDA keeps assuring the public it will promulgate a final rule on menthol cigarettes at some later date. Preserving the stay until the FDA completes—or officially abandons—its rulemaking risks significantly delaying the resolution of this case. The unexpected length of the FDA's administrative process now outweighs any advantages of deferring to the agency. Since a stay is no longer justified under the primary jurisdiction doctrine, the Court will **GRANT** plaintiffs' motion to lift the stay.

1

## I. BACKGROUND

### A. The Primary Jurisdiction Doctrine

"The primary jurisdiction doctrine allows a district court to dismiss, or stay, an action over which it has subject-matter jurisdiction." *Himmelman v. MCI Commc'ns Corp.*, 104 F. Supp. 2d 1, 7 (D.D.C. 2000). "When adjudicating a claim would 'require[] the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body,' the primary jurisdiction doctrine permits a court to suspend the judicial process 'pending referral of such issues to the administrative body for its view.'" *United States v. Philip Morris USA Inc.*, 686 F.3d 832, 837 (D.C. Cir. 2012) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).

No exact formula exists for when to apply the primary jurisdiction doctrine. *Id.* (citing *W. Pac. R.R. Co.*, 352 U.S. at 64). Courts in this Circuit, however, generally examine the following factors:

> (1) whether the question at issue is within the conventional expertise of judges; (2) whether the question at issue lies particularly within the agency's discretion or requires the exercise of agency expertise; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Himmelman*, 104 F. Supp. 2d at 4; *United States v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 68, 78 (D.D.C. 2011) (same), *aff'd*, 686 F.3d 832 (D.C. Cir. 2012). Another important consideration is the length of the agency's process:

> When reaching a decision to defer, a court must consider how long an administrative process will run before its work is done. When the time necessary to completion is short, the case for deference is great. But when that process threatens to drag on . . . for many years, then the rationale supporting deference is much weaker. While that process struggles forward plaintiff's case grows stale. Witnesses vanish, memories dim, and the record grows more distant and difficult to retrieve with every day.

*Rohr Indus., Inc. v. Wash. Metro. Area Transit Auth.*, 720 F.2d 1319, 1326 (D.C. Cir. 1983).

B.  **Factual Background**

Reeves is a citizen of Colorado who resides in the District of Columbia. Compl. ¶ 12, ECF No. 1.  O'Malley is a citizen of New York who also resides in the District of Columbia. *Id.*  7-Eleven is a convenience store chain. *Id.* ¶ 1.  It is both incorporated and headquartered in Texas. *Id.* ¶ 17.  On multiple occasions, Reeves and O'Malley purchased menthol cigarettes from 7-Eleven's stores around the country including, in O'Malley's case, within the District of Columbia. *Id.* ¶¶ 56–57.

A menthol cigarette is a cigarette containing menthol, a minty flavor additive. *Id.* ¶¶ 5, 31.  According to plaintiffs, menthol disguises the taste of cigarettes, enticing new smokers, and enhances the effects of nicotine, trapping smokers who wish to quit. *Id.* ¶¶ 4–5.  For these reasons, "menthol cigarettes are far more dangerous and addictive than any other type of cigarette available to consumers." *Id.* ¶ 3.  Nonetheless, plaintiffs allege that 7-Eleven holds out menthol cigarettes as regular cigarettes and does not disclose the particular dangers of this method of tobacco consumption. *Id.*

C.  **The FDA's Rulemaking on Menthol Cigarettes**

The FDA is the "primary Federal regulatory authority with respect to the manufacture, marketing, and distribution of tobacco products." *Philip Morris USA Inc. v. U.S. Food & Drug Admin.*, 202 F. Supp. 3d 31, 36 (D.D.C. 2016) (quoting Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, § 3(1), 123 Stat. 1776, 1781 (2009)).

In 2010, an FDA advisory committee began reviewing evidence about the dangers of menthol cigarettes. Compl. ¶¶ 27–29.  The following year, the committee reported that excluding these products from the marketplace would benefit American public health. *Id.* ¶¶ 30–40.  A later

3

FDA investigation concurred in the committee's finding that menthol cigarettes pose a greater risk to public health than ordinary cigarettes. *Id.* ¶¶ 41–43.

In April 2022, the FDA took action, announcing a proposed rule to ban the use of menthol in cigarettes and prohibit the manufacture, distribution, and sale of such cigarettes. *Id.* ¶¶ 51–54; *see also* Tobacco Product Standard for Menthol in Cigarettes, 87 Fed. Reg. 26,454, 25,455 (proposed Apr. 4, 2022). The FDA initially set a deadline for promulgation of the final rule of August 2023. *See* Off. of Info. and Regul. Affs., Tobacco Product Standard for Menthol in Cigarettes (Fall 2022), https://tinyurl.com/3kcexcnw [https://perma.cc/XG3E-66WV]. But the FDA missed its deadline. Next, the FDA indicated it would publish the final rule by the end of 2023. Jen Christensen, FDA Says It Will Finalize Ban on Menthol Tobacco Products "in Coming Months," CNN (Sept. 1, 2023) https://tinyurl.com/3wfv9nzn [https://perma.cc/4UPM-SBHF]. That did not happen. The FDA set a new deadline for March 2024. Off. of Info. and Regul. Affs., Tobacco Product Standard for Menthol in Cigarettes (Fall 2023), https://tinyurl.com/2s3zmk8y [https://perma.cc/AFM2-CYM7]. Again, the agency blew past its own deadline. Now, the agency's deadline for final action is "To Be Determined." Off. of Info. and Regul. Affs., Tobacco Product Standard for Menthol in Cigarettes (Spring 2024), https://tinyurl.com/3urpydv7 [https://perma.cc/S5RY-7F3G]. According to the Secretary of Health and Human Services, "[i]t's clear that there are still more conversations to have, and that will take significantly more time." Press Release, U.S. Dep't of Health and Hum. Servs., Secretary Becerra Statement on the Proposed Menthol Cigarette Rule (Apr. 26, 2024), https://tinyurl.com/yckr4hrf [https://perma.cc/K9A7-ZB8B].

### D. Procedural History of This Case

The plaintiffs filed suit in November 2022. Compl. They advanced four claims related to 7-Eleven's sale of menthol cigarettes: (1) violation of the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 et seq.; (2) negligent misrepresentation; (3) breach of the implied warranty of merchantability; and (4) breach of the implied warranty of fitness for purpose. *Id.* ¶¶ 82–131. Plaintiffs seek damages and injunctive relief requiring disclosure of the added danger of menthol cigarettes. *Id.* ¶ 16; 27–28.

However, in February 2023 the parties invoked the primary jurisdiction doctrine and jointly moved to stay the proceedings pending the resolution of the FDA's rulemaking on menthol cigarettes. *See* Joint Stay Mot., ECF No. 7. The parties noted that the FDA had proposed a rule banning menthol cigarettes in May 2022 and had accepted comments through August 2022. *Id.* ¶ 3. The motion also observed that a few months prior to this suit, plaintiffs' counsel brought "a substantively identical putative class action . . . against another retailer." *Id.* ¶ 5; *see Price v. Walgreen Co.*, No. 1:22-cv-21405 (RNS) (S.D. Fla.). In that case, the court granted the parties' joint motion to stay pursuant to the primary jurisdiction doctrine. *See* Order, ECF No. 14, *Price v. Walgreen Co.*, No. 1:22-cv-21405 (RNS) (S.D. Fla. Aug. 30, 2022).[1]

The Court granted the parties' motion to stay the proceedings on February 9, 2023. *See* Stay Order, ECF No. 10. Since both the FDA's proposed rule and plaintiffs' claims "concern[] the sale of menthol cigarettes in the United States," the Court ordered that the case "remain stayed until either the effective date of any final rule or until FDA announces it will not proceed with a

---

[1] Plaintiffs' counsel has not moved to lift the stay in that case. It remains in effect.

final rule." *Id.* at 2.  The Court also granted the parties' joint motion to extend the time for 7-Eleven to respond to the Complaint until thirty days after the end of the stay.  Order, ECF No. 9.

In September 2023, plaintiffs moved to lift the stay.  *See* Pls.' Mot. to Lift Stay, ECF No. 12. Defendant filed an opposition, Def.'s Opp'n, ECF No. 13, and plaintiffs filed a reply, Pls.' Reply, ECF No. 14.  Since then, both parties have filed notices of further agency action. *See* Def.'s Notice, ECF No. 17; Pls.' Notice, ECF No. 20; *see also* Def.'s Response to Pl.'s Notice, ECF No. 21.

## II.  DISCUSSION

Much has changed since the Court stayed this case. The FDA has significantly and repeatedly delayed its final rulemaking on menthol cigarettes—an important consideration in the primary jurisdiction analysis.  Compared to the delay, the factors favoring a continued stay are relatively weak.  Granted, this case does raise a question about the risks of menthol cigarettes that is within the FDA's expertise.  But questions concerning deceptive practices are within the conventional competence of the courts.  And the Court sees no substantial danger of inconsistent rulings between this Court and the FDA since the FDA's decision to ban (or not ban) menthol cigarettes would not conflict with a ruling that 7-Eleven need (or need not) disclose their dangers. Finally, plaintiffs have not made a prior application to the FDA.  The FDA's unexpectedly drawn-out administrative process now risks working a disadvantage to the plaintiffs that outweighs any advantages of applying the primary jurisdiction doctrine.  Rather than keep waiting for a final rule that may never come, the Court will thus grant plaintiffs' motion to lift the stay.

The FDA's repeated delays have sapped the justification for a stay under the primary jurisdiction doctrine.  7-Eleven initially opposed plaintiffs' motion to lift the stay by pointing to the FDA's self-imposed deadlines.  *See* Def.'s Opp'n 5–6 ("Plaintiffs also do not identify any

6

relevant factual change since the Court's prior order. Most importantly, they do not (and cannot) contend that FDA has stopped actively considering prohibiting menthol in cigarettes. To the contrary, FDA announced that it intends to issue its final rule by the end of the year."); Def.'s Notice 2 ("FDA's continued progress toward publishing the final rule provides yet more support for a continued stay of this litigation pending a rule becoming effective or the FDA announcing that it will not issue one . . . ."). As it became clear a final rule was not actually imminent, 7-Eleven changed tack, contending that "FDA's timeline has never been certain, and in any event has nothing to do with the reasons the Court entered the stay." Def.'s Response to Pl.'s Notice 3.

What 7-Eleven misses, however, is that an agency's timeline for acting is an important factor in the primary jurisdiction analysis. *See* Richard J. Pierce, Jr., Administrative Law Treatise § 14.6 (5th ed. 2010) ("[C]ircuit courts almost invariably resolve primary jurisdiction disputes through application of a balancing test in which they weigh the potential delay resulting from invocation of primary jurisdiction against the advantages of applying the doctrine") (collecting cases). In *Rohr Industries*, the D.C. Circuit explained that "[w]hen reaching a decision to defer [to an agency], a court must consider how long an administrative process will run before its work is done." 720 F.2d at 1326. In that case, the court could not "ignore the reality of the pace of litigation at the" agency. *Id.* at 1326 n.7. In part because the "administrative process . . . [had] been an excruciatingly slow one," the court moved forward with the case. *Id.* at 1326. And in *Alpharma, Inc. v. Pennfield Oil Co.*, the Eighth Circuit declined to stay or dismiss a case in part because it had been "[n]early two years . . . since the FDA published its" initial notices relating to the case "and there [was] no indication that the agency [would] soon finalize those actions." 411 F.3d 934, 939 (8th Cir. 2005). Similarly, the Second Circuit recently declined to defer to the FDA after the agency "abandoned [its] previously announced timelines," *White v. Beech-Nut Nutrition*

7

*Co.*, No. 23-220-cv, 2024 WL 194699, at *2 (2d Cir. Jan. 18, 2024) (summary order), and has refused to defer to another agency when doing so "would unnecessarily prolong the case," *Seneca Nation of Indians v. New York*, 988 F.3d 618, 629 (2d Cir. 2021); *see also Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. and Tel. Co.*, 46 F.3d 220, 225 (2d Cir. 1995) (declining to defer to the FCC because "a potential delay of even two years more than outweighs any benefit that might be achieved by" deferring).

The importance of the length of the agency's process is further suggested by the Supreme Court's decision in *Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corp.*, 489 U.S. 561 (1989). Although *Coit* involved the doctrine of exhaustion of administrative remedies, rather than primary jurisdiction, the two are "closely related," Pierce, supra, § 14.6, because each "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties," *W. Pac. R.R.*, 352 U.S. at 63. In *Coit*, the Supreme Court held that creditors of a failed savings and loan association could proceed directly to federal court, without first having to exhaust an agency's administrative claims procedure, because the agency's rules did not establish a "reasonable time limit" for its resolution of such claims. *Coit*, 489 U.S. at 587. *Coit* thus underscores the principle that potential for delay is a key factor in determining whether a federal court should await agency action before hearing a case.

Given the significance of agency delay, in this case the unexpected length of the FDA's administrative process weighs heavily in favor of lifting the stay. As with the administrative process in *Rohr Industries*, the agency's administrative process has been slow. And, like in *Beech-Nut Nutrition*, there is currently no timetable for when—if ever—the FDA will issue its final rule. Much as in *Alpharma*, two years have passed since the FDA published its proposed rulemaking

concerning menthol cigarettes and still there is no sign of a final rule anytime soon. In fact, one can wonder if the final rule will ever arrive. *See* Christina Jewett & Noah Weiland, *Biden Delays Ban on Menthol Cigarettes*, N.Y. Times (Apr. 26, 2024), https://www.nytimes.com/2024/04/26/health/menthol-cigarettes-ban-biden-fda.html [https://perma.cc/CV5K-PXJT] (characterizing the FDA's latest delay as "effectively quashing" the proposed ban). This is precisely the sort of delay that risks enabling "[w]itnesses [to] vanish, memories [to] dim, and the record [to] grow[] more distant and difficult to retrieve." *Rohr Indus.*, 720 F.2d at 1326. Moreover, when the parties moved for a stay in February 2023, they would not have expected a delay of any more than six months, since at that point the FDA's deadline for its final rule was still August 2023. *See* Off. of Info. and Regul. Affs., Tobacco Product Standard for Menthol in Cigarettes (Fall 2022); Off. of Info. and Regul. Affs., Tobacco Product Standard for Menthol in Cigarettes (Fall 2023). Given the costs of the delay, the next question is whether they are outweighed by any benefits to retaining the stay.

The Court concludes that the remaining primary jurisdiction factors do not suffice to make deferring to the FDA worth the wait.

Granted, one factor does favor the stay. A central question in this case—the relative dangerousness of menthol cigarettes—"lies particularly within the agency's discretion or requires the exercise of agency expertise." *Himmelman*, 104 F. Supp. 2d at 4. As the Court previously found in granting the stay, both the FDA's proposed rule and plaintiffs' Complaint "concern[] the sale of menthol cigarettes in the United States." Stay Order 2. Accordingly, resolving plaintiffs' claims may require a scientific determination that menthol cigarettes are more dangerous than ordinary cigarettes. Indeed, plaintiffs themselves initially contended that if the FDA's final rule were promulgated, it would "bear directly on their claims." Joint Stay Mot. ¶ 4 (citing Compl.

9

¶¶ 40–43, 50–54); *see also* Def.'s Opp'n 5 (noting that "Plaintiffs' Complaint is shot through with references to FDA's conduct"). This factor therefore favors maintaining the stay.

Yet the remaining factors do not support a stay. First, plaintiffs' CPPA and common law claims alleging deceptive practices are within the scope of this Court's expertise. *See Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 16 (D.D.C. 2019) (noting that CPPA and common law tort claims "are regularly subject to judicial review and therefore fall squarely within the conventional expertise of the courts"); *cf. Philip Morris USA*, 686 F.3d at 838 (explaining that "courts consistently have refused to invoke the primary jurisdiction doctrine for 'claims based upon fraud or deceit'—claims that are 'within the conventional competence of courts'" (quoting *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990)). Second, the Court does not see a "substantial danger of inconsistent rulings" between itself and the FDA. *See Himmelman*, 104 F. Supp. 2d at 4. The FDA's proposed ban on menthol cigarettes does not address whether retailers should have clearly differentiated menthol cigarettes from their nonmenthol counterparts even before any ban has taken effect. Third, there is nothing in the record to suggest that plaintiffs have previously raised their claims before the FDA.

In balancing all the relevant factors, the Court concludes that the delay engendered by the FDA's foot-dragging outweighs this case's partial focus on a question within the FDA's scientific expertise. In light of this change in circumstances since the Court issued the stay, the Court will grant plaintiffs' motion.

7-Eleven's final argument for retaining the stay is unpersuasive. 7-Eleven contends that "Plaintiffs' counsel have not asked to lift the stay in *Price*, even though *Price* was filed six months before this litigation and even though all of Plaintiffs' supposed rationales for lifting the stay here apply there as well." Def.'s Opp'n 6. According to 7-Eleven, lifting this stay despite plaintiffs'

counsel's failure to make a similar request in *Price* would enable plaintiffs' counsel "to forum shop by selectively unpausing this litigation." *Id.* But when considering how one case bears on another (as, for example, with collateral estoppel), courts typically focus on the identities of the *parties* or their privies, not their *lawyers*. *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008). 7-Eleven offers no authority for its position that the Court should deny plaintiffs' motion to lift the stay simply because their counsel has not filed a similar motion in a parallel case. The Court sees no reason to adopt such a rule.

Moreover, the continuation of the stay in *Price* does not affect how the primary jurisdiction factors apply to this case. That *Price* remains stayed does not (1) make plaintiffs' claims suddenly beyond the scope of this Court's expertise or more within that of the FDA, (2) increase the risk that this Court and the FDA will arrive at inconsistent rulings, (3) change the fact that plaintiffs did not make a prior application to the FDA, or (4) expedite the FDA's rulemaking. What plaintiffs' counsel chooses to do in *Price*, then, has little to no bearing on the proper course of action here.

### III.   CONCLUSION

The Court will lift the stay because there has been a meaningful change in circumstances since this Court instituted the stay: the FDA has repeatedly and indefinitely delayed its rulemaking concerning menthol cigarettes. Since this is not otherwise a paradigmatic case for deference to the FDA under primary jurisdiction, a stay is no longer justified.

For the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' Motion to Lift the Stay is **GRANTED**; and it is further

**ORDERED** that the stay previously imposed in this case is **VACATED**; and it is further

**ORDERED** that this case be returned to the active docket of this Court; and it is further

**ORDERED** that in accordance with the Court's February 7, 2023 Order, ECF No. 9, defendant shall file any responsive pleading or motion to dismiss within 30 days of this Order.

Date: 7.29.24

Royce C. Lamberth
United States District Judge