## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **S.J. REEVES** *and* **H. O'MALLEY**, *individually and on behalf of all others similarly situated*, | |
| *Plaintiffs,* | |
| **v.** | **Case No. 1:22-cv-3533-RCL** |
| **7-ELEVEN, INC.**, | |
| *Defendant.* | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs S.J. Reeves and H. O'Malley bring this putative class action on behalf of themselves and all United States residents who purchased menthol cigarettes from Defendant 7-Eleven for the period covering the four years preceding the filing of this action until present. Plaintiffs allege that 7-Eleven misled consumers into believing that menthol cigarettes pose the same health risks as nonmenthol cigarettes by shelving the products next to one another in its stores. Plaintiffs seek damages and injunctive relief under D.C. consumer protection law and D.C. contract law.

Before the Court is Defendant's 12(b)(6) Motion to Dismiss for failure to state a claim. *See* Mot. to Dismiss, ECF No. 34 ("MTD"). Because the Court agrees that Defendant has not made a "representation" under D.C. consumer protection law, and because Plaintiffs have not presented any plausible contract claims, Defendant's motion will be **GRANTED** by separate order and this case will be **DISMISSED**.

# I.    BACKGROUND

### a.  Key Facts

The Court draws the following facts from the well-pleaded allegations in Plaintiffs' Complaint and attached exhibits.

Plaintiffs S.J. Reeves and H. O'Malley purchased menthol-flavored tobacco products ("Products"), including but not limited to Newport and Kool menthol cigarettes, on multiple occasions from various 7-Eleven locations in Colorado, Washington, D.C., New York, Maryland, and Virginia.  Compl. ¶¶ 56–57.  In purchasing the Products, Plaintiffs believed they were purchasing "ordinary" cigarettes with the same health risks as nonmenthol cigarettes.[1]  *Id.* ¶ 59.  Plaintiffs claim that their mistaken belief arose from 7-Eleven's "advertising and marketing,"[2] as well as its placement of the Products "next to normal cigarettes."  *See id.* ¶¶ 59–60.  Plaintiffs attach several photos in Exhibit 1 to the Complaint: one photo of a 7-Eleven advertisement offering $1.79 off the purchase of two packs of Marlboro cigarettes for customers using the 7-Eleven app, and two photos of 7-Eleven's selection of tobacco products stocked on shelves behind the counter.  Ex. 1 to Compl.  In the displays behind the counter, Products are shelved next to a variety of other tobacco products, including but not limited to nonmenthol cigarettes.  *Id.*

Plaintiffs also offer a host of information suggesting that the Products are more addictive and can be harder to quit than nonmenthol cigarettes because they "enhance the effects of nicotine."  *See* Compl. ¶¶ 3–7, 22–56.  For the purpose of resolving this motion to dismiss, the

---

[1] Plaintiffs refer several times throughout the complaint to "ordinary" and "normal" cigarettes.  Though they do not point to any particular type of cigarette when making these statements, the Court assumes that Plaintiffs are referring to nonmenthol tobacco cigarettes, such as Marlboro cigarettes.

[2] Beyond a single photo of a promotion for Marlboro cigarettes attached to the Complaint, Plaintiffs do not allege any other specific advertising or marketing of menthol or nonmenthol cigarettes on the part of 7-Eleven.

Court assumes without deciding that Products are in fact more dangerous than nonmenthol cigarettes and pose greater health risks to consumers.

### b. Procedural History

Plaintiffs filed a four-count Complaint on November 19, 2022. *See* Compl. Count I alleges a violation of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code. § 28-3901, *et seq*, on the theory that 7-Eleven misrepresented the health risks associated with menthol cigarettes by placing them next to "ordinary cigarettes" on its shelves. *Id.* ¶¶ 83–102. Count II alleges negligent misrepresentation of the risk of smoking menthol cigarettes through 7-Eleven's advertising, but Plaintiffs have since abandoned this claim. *Id.* ¶¶ 103–11; Resp. to MTD at 3 n.1, ECF No. 38 ("Opp'n"). Count III alleges a breach of the implied warranty of merchantability on the ground that menthol cigarettes are not suitable for ordinary use because they are more dangerous than nonmenthol cigarettes. Compl. ¶¶ 112–21. Count IV alleges a breach of the implied warranty of fitness for a particular purpose on the ground that Plaintiffs sought to purchase cigarettes with the same risk profile as nonmenthol cigarettes and relied on 7-Eleven's judgment to select suitable goods for that purpose. *Id.* ¶¶ 122–31.

On February 7, 2023, this Court granted a joint motion to stay proceedings while the FDA considered a proposed rule banning menthol cigarettes, which Plaintiffs contended bore on their claims in this case. *See* Order Granting Mot. Stay, ECF No. 10. The FDA initially expected to complete its rulemaking by August 2023, but that deadline came and went without a rule or a new timeline for a decision. As a result, this Court granted Plaintiffs' motion to lift the stay on July 29, 2024. *See* Order Granting Mot. Lift Stay, ECF No. 22. Two months later, Defendant moved to dismiss under Rule 12(b)(6), asserting that 7-Eleven had not represented "*anything* about the relative hazards of menthol and non-menthol cigarettes—expressly or impliedly—simply by

stocking [the products] next to one another."  MTD at 1.  Plaintiffs opposed on November 11, 2024, *see* Opp'n, and 7-Eleven replied on December 2, 2024, *see* Reply, ECF No. 41.  The motion is now ripe.

## II.    LEGAL STANDARD

A complaint is subject to dismissal if the defendant, by motion, demonstrates that a plaintiff's pleading "fail[s] to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court evaluating a Rule 12(b)(6) "motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor."  *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 40 (D.D.C. 2018).  However, "[a] court need not accept a plaintiff's legal conclusions as true, nor must a court presume the veracity of legal conclusions that are couched as factual allegations."  *Id.*  (citing *Twombly*, 550 U.S. at 55).  A court deciding a motion under Rule 12(b)(6) may also consider "documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice."  *U.S. House of Reps. v. Burwell*, 130 F. Supp. 3d 53, 64 (D.D.C. 2015).

## III.    DISCUSSION

### a.  CPPA Claim

Plaintiffs claim that 7-Eleven has violated the CPPA by engaging in "unfair and deceptive practices," specifically by "represent[ing] the Products as ordinary cigarettes and fail[ing] to disclose that the Products are in fact much more harmful and addictive than . . . other nonmenthol

cigarettes." Compl. ¶ 89. After Defendant argued in its Motion to Dismiss that any request for 7-Eleven to post additional warnings about the dangers of menthol cigarettes would likely be preempted by federal regulation, *see* MTD at 8–19, Plaintiffs clarified that they "do not ask 7-Eleven to post additional warnings or alter federal labeling." Opp'n at 9. Rather, "they challenge the implied message conveyed by the product placement itself, a practice that 7-Eleven chose independently of any federal labeling requirements." *Id.* Based on this statement, the Court considers 7-Eleven's product placement alone as the basis for Plaintiffs' CPPA claim.

Under the CPPA, it is unlawful "for any person to engage in an unfair or deceptive trade practice," including, as relevant here, "(a) represent[ing] that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have;" "(d) represent[ing] that goods . . . are of a particular standard, quality, grade, style, or model, if in fact they are of another;" "(e) misrepresent[ing]  as to a material fact which has a tendency to mislead;" "(f) fail[ing]  to state a material fact if such failure tends to mislead;" "(f-1) us[ing]  innuendo or ambiguity as to a material fact, which has a tendency to mislead." D.C. Code § 28-3904 (a), (d), (e), (f), (f-1). "When reviewing a claim of unfair practice under the CPPA, courts are advised to follow 'basic common sense' and consider 'how the practice would be viewed and understood by a reasonable consumer.'" *Hettinger v. Bozzuto Mgmt. Co.*, No. 23-3687, 2024 WL 1833855, at *3 (D.D.C. Apr. 26, 2024) (quoting *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008)).

At issue here is whether 7-Eleven's product placement amounts to a "representation" under the CPPA. Plaintiffs argue that the placement of Products next to nonmenthol cigarettes amounts to a representation on 7-Eleven's part that both products are equally dangerous to consumers. Defendant counters that the juxtaposition cannot make that representation because 7-Eleven makes

no representation as to the risks of *any* of its tobacco products merely by stocking them next to one another on the same restricted shelf behind the counter.

In their briefs, both parties rely on a 2022 decision from the D.C. Court of Appeals, *Center for Inquiry Inc. v. Walmart, Inc.*, 283 A.2d 109 (D.C. 2022), which considered whether the placement by Walmart and CVS of homeopathic products next to FDA-approved over-the-counter medications amounted to an actionable representation under the CPPA. The Court ultimately held that it did. *Id.* at 118–20. Plaintiffs rely on *Center for Inquiry* for the proposition that "product placement alone can convey an actionable, misleading message under the CPPA," Opp'n at 14, while Defendant argues that the product placement in that case only amounted to a representation because it appeared alongside aisle signage suggesting "that products in those aisles conferred 'Cold, Cough & Flu Relief,'" MTD at 21–22. This Court agrees with Defendant that the additional signage was essential to the Court of Appeals' opinion that the placement of homeopathic products next to FDA-approved medication amounted to an actionable representation under the CPPA.

The Court reaches that conclusion because in *Center for Inquiry*, the plaintiffs specifically alleged that Walmart and CVS "present homeopathic products alongside FDA-approved over-the-counter products, under aisle signs indicating that the aisles contain remedies for pain, colds, heartburn, and other conditions." 283 A.2d at 122. Because the retailers did so "without informing customers that there is no scientific evidence that homeopathic products have any value in treating those symptoms and diseases" plaintiffs alleged that the retailers had made a misrepresentation as to the efficacy of the homeopathic products. *Id.* Plaintiffs alleged that the aisle signage itself led consumers to believe that all the products in that aisle were suitable for treating the advertised ailments. The Court of Appeals therefore concluded that the factual allegations "plausibly support[ed] an inference that, through their product placement practices, Walmart and CVS

mislead consumers into believing that homeopathic products are equivalent alternatives to FDA-approved over-the-counter drugs." *Id.*

By contrast, Plaintiffs in this case do not allege aisle signage, advertising, or any other facts to suggest that 7-Eleven presents *any* of its tobacco products (menthol or nonmenthol) as suitable for any purpose other than consumption. Similarly, plaintiffs fail to allege that 7-Eleven makes a representation as to the level of risk associated with consuming *any* tobacco product that it sells. It is therefore not plausible to claim that the average customer would conclude that 7-Eleven is making a representation of any kind, let alone one as to the relative risks associated with consuming menthol and nonmenthol cigarettes merely by shelving the products next to one another. This conclusion is further supported by Plaintiffs' failure to allege that the placement of other tobacco products (such as cigarillos and electronic cigarettes) on the same shelves make similar representations of relative risk when compared to "ordinary" cigarettes. Furthermore, Plaintiffs do not allege that menthol and nonmenthol cigarettes appear in the same positions on shelves across 7-Eleven stores such that their placement could communicate a consistent message. For these reasons, the Court finds that Plaintiffs fail to present a plausible claim that 7-Eleven makes a representation at all. Because the existence of a misrepresentation is an essential element a CCPA claim, this finding proves fatal. It is therefore not necessary to determine if the representation is plausibly misleading to customers.

To be clear, the Court does not foreclose the possibility that the mere placement of two products next to one another (even without additional signage or other facts) might, under appropriate circumstances, lead to a misrepresentation that is actionable under the CPPA. Plaintiffs do not, however, allege any such circumstances in this case.

### b.  Implied Warranty Claims

Plaintiffs also allege two contract claims: (1) a violation of the implied warranty of merchantability in violation of D.C. Code. § 28:2-314, and (2) a violation of the implied warranty of fitness for a particular purpose in violation of D.C. Code § 28:2-315.  Compl. ¶¶ 112–21, 123–31.  Neither claim holds water.

Plaintiffs allege a violation of the implied warranty of merchantability on the theory that 7-Eleven warranted that Products "are ordinary cigarettes when in fact, the Products pose a public health risk above that seen with nonmenthol cigarettes."  *Id.* ¶ 123.  However, Plaintiffs do not allege any facts to suggest that 7-Eleven warranted the products as being anything other than menthol cigarettes.  Nor do Plaintiffs suggest that they did not know they were purchasing menthol cigarettes either upon first purchase, or in any subsequent purchase.  Because tobacco products are placed on restricted shelves behind the counter in 7-Eleven stores, Plaintiffs had to ask a cashier for specific menthol products.  These facts do not suggest that Plaintiffs were confused about what products they were purchasing.

Moreover, Plaintiffs do not allege any facts to suggest that Products were not merchantable as menthol cigarettes.  They do not claim that the Products were not fit for ordinary consumption as menthol cigarettes, nor that the cigarettes violated any other facet of the implied warranty of merchantability contained in § 28:2-314.  Plaintiffs therefore do not state a plausible claim for relief.

Plaintiffs allege a similar violation of the implied warranty of fitness for a particular purpose on the theory that Plaintiffs sought to purchase cigarettes with the same risk profile as nonmenthol cigarettes and relied on 7-Eleven's judgment to select suitable goods for that purpose.  *Id.* ¶¶ 122–131.  This claim is even less plausible.  To begin, nowhere in the complaint or

subsequent briefing do Plaintiffs present any facts to suggest that 7-Eleven knew or had reason to know that these Plaintiffs sought cigarettes with the same risk profile as "ordinary" nonmenthol cigarettes. Recall that the Plaintiffs had to specifically ask the cashier for menthol cigarettes in order to purchase them. Plaintiffs do not suggest that they communicated any other purpose for the products than mere consumption as menthol cigarettes. Nor do they suggest that they communicated a desire to purchase cigarettes with the same risk profile as "ordinary" tobacco cigarettes. On the facts presented, Plaintiffs could not have relied on 7-Eleven's skill or judgment to select menthol cigarettes for any purpose other than smoking menthol cigarettes. Plaintiffs therefore do not state a plausible claim for relief under either warranty theory.

## IV.    CONCLUSION

For the foregoing reasons, all Counts are dismissed for failure to state a claim. Therefore, the Court will **GRANT** the motion by separate order and the case will be **DISMISSED**.

Date:  _____9-30-25_____

_Royce C. Lamberth_
Royce C. Lamberth
United States District Judge